**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELIGIO BUENO, | : |
| | : Civil Action No. 11-1631(FLW) |
| Petitioner, | : |
| | : |
| v. | : OPINION |
| | : |
| GREG BARTKOWSKI, | : |
| | : |
| Respondent. | : |

**APPEARANCES:**

**ELIGIO BUENO,** Petitioner pro se
498139/550762-C
New Jersey State Prison
P.O. Box 861
Trenton, New Jersey 08625

**BRIAN DENNIS GILLET,** Counsel for Respondent
Middlesex County Prosecutor's Office
25 Kirkpatrick Street
3rd Floor
New Brunswick, New Jersey 08901

**WOLFSON,** District Judge

Petitioner Eligio Bueno, a prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondent is the Warden of New Jersey State Prison, Greg Bartkowski. For the reasons stated below, the Petition is denied.

## I. BACKGROUND

### A. Factual Background

The relevant facts are set forth in the opinion of the

Superior Court of New Jersey, Appellate Division.[1]

    At approximately 3:30 a.m. on Saturday, June 29, 2002, Rashiem "Rock" Reed was shot in the head as he stood on the street in front of 76 Union Street in Carteret. He was taken to Rahway Hospital, where he died shortly thereafter. Earlier that morning, Reed had been at Charlie's Pub with his friend, Javier Gonzalez, playing pool when defendant arrived at the same location. Reed was friends with both Gonzalez and defendant.

    Reed and defendant played pool, drank some beer, and talked until the bar closed at 3:00 a.m. After the bar closed, Reed, Gonzalez, and defendant went to Gonzalez's house to "have a few drinks and ... hang out in front of [the] house." After arriving at Gonzalez's house, they were joined by another friend, Christian Davis, who was walking home from a different bar. At the trial, Davis testified that "people were just talking" for a few minutes and then defendant said he was leaving. Davis described what happened next as follows:

        Q. And so Bueno got up and said he was leaving. Then what happens?

        A. Well, he shook people['s] hands and then Rock asked him [do] you know where the shortcut [is] at. He said no, show me, something like that, and they walked off.

        Q. Did one of them walk off first?

        A. They walked together.

        Q. Where did they walk to?

        A. The front of the next house.

        ....

        Q. How do you know they walked off?

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

A. I seen them walk off but I wasn't like really paying attention to them.

Q. But you did see them walk off.

A. Yes.

Q. Did there come a time when they stopped?

A. Yes.

Q. Did you see what happened then?

A. They were talking. Me and Javier was talking.

Q. Tell us what happens now.

A. A shot went off.

Q. When the shot went off where were you looking?

A. I was facing towards Javier.

Q. When the shot went off what did you do?

A. Reaction. I looked to my left. I seen Rock falling.

Q. What else did you see?

A. I seen Bueno turning away like jogging like. Then he glanced back at us like he was tucking something in his waist and kept going.

Q. Did you see what he was tucking in his waist?

A. No.

....

Q. Did you see Bueno's face after the shot went off?

A. After the shot, yes. He glanced back and looked at us I guess like to see if we was

3

going to do something, or something.

Q. Was there anyone in the area besides yourself, Javier, Rock and Bueno when the shot went off?

A. No.

Q. Was there anyone else that you could see on the street?

A. No.

When Javier Gonzalez was asked to tell the jury what happened after defendant said he was leaving, Gonzalez stated:

Well, Rock asked him are you leaving? He said yes. I'm going to Brunswick. He gets up and ... Rock told him I'm going to show you a shortcut. He said where you going? He said I'm going to the circle. I'm going to show you a shortcut. He gets up. He shakes my hand. Rock opens the gate. He started walking. He walks outside of the gate. He shakes Christian's hand. So Rock, he was walking down the sidewalk and Bueno was on his left[-]side shoulder behind him and I'd say 15 feet I see Rock pointing to the right direction he was giving to him and I see Bueno's arm raise up. He had a black square gun and he shot him. I heard Rock fall back on his back when he hit the ground.... We ran towards Rock. Bueno was jogging. He had tucked his arm under his shirt and he was looking back and I seen blood just coming out of Rock's side of the face so I ran back to the house and I opened the door. I grabbed the cordless phone and I pressed 911 and I still could see Bueno looking back while he was jogging....

Within a few minutes of the shooting, Carteret Police Sergeant Dennis McFadden arrived at the scene, spoke to Gonzalez, and then went to defendant's home where he spoke to defendant's father and his sisters. McFadden asked for and received a photograph of defendant. He was also given defendant's cell phone and pager numbers.

4

Defendant elected to testify at his trial, and he denied shooting Reed. According to defendant, he was ten or fifteen feet in front of Reed when he heard a loud pop. When he turned around, defendant saw "Rock on the floor" and a "black guy" "in a white shirt" was running. Defendant testified that he ran because "[p]anic just kicked in." Defendant took a cab from Carteret to Plainfield, and then he took a train to New York. Defendant testified that he did not go home because he was scared. Before getting on the train, defendant spoke with his father and sisters on the telephone. When defendant spoke to his father, he told him "he had a problem," and he told his sister, Elibelka, that she was not going to see him for a few years. Elibelka also acknowledged telling the police that her brother told her: "Rock tried to steal money from me and then he tried to stab me, he cut my shoulders and my arms, and so I had to shoot him."

The jury also heard the testimony of Edison Jacquez. Jacquez and defendant worked together at one of the New Jersey Turnpike rest stops. According to Jacquez, he gave defendant a ride home after work on Friday, June 28, 2002. On the ride home, defendant told Jacquez that he was going to meet a friend named "Ra," who owed him several hundred dollars, at a bar. Defendant also said that if the friend did not have the money, he was going to "buck" him, which, according to Jacquez, meant shoot him.

Jacquez told the jury that he spoke to defendant on his cell phone after hearing about the shooting, and he asked defendant what happened. According to Jacquez, defendant told him that he didn't get his money, and he also told Jacquez, "I got him."

Defendant was arrested in Newark on July 12, 2002. He had previously asked a friend to meet him with some money, but the friend contacted the Carteret Police. When the police appeared, defendant ran. However, after a short chase, defendant was apprehended and taken into custody.

In response to defendant's motion for a new trial, the State argued that "there were two eye witnesses, admission[s] to family members," and the evidence of guilt was "simply over-whelming." The trial court agreed, and, based on our independent review of the record, we concur as well.

Although defendant made no objection at trial, he now contends a portion of his cross-examination was improper because it violated his "right to remain silent and deprived him of his constitutional right to ... a fair trial." During cross-examination, the assistant prosecutor asked defendant about his telephone records which showed that he received a telephone call at approximately 4:18 a.m. while he was riding in a cab on his way to the train station.

Q. 4:12 called that 917 number again. 4:12 they're calling you back. 4:12:18, you see that entry?

A. Yes.

Q. That's when McFadden called you, right?

A. Yes.

Q. He identified himself as a police officer?

A. Yes.

Q. And he said why don't you come down and talk to us, something like that?

A. Yes.

Q. And you didn't tell him anything about witnessing a shooting or anything, right?

A. Well, he told me that there was a shooting and he wanted me in for questioning and I told him yes, give me about a half an hour and I'll be there.

Q. Did that ever happen?

A. No.

Q. Did you ever give a description of this so called shooter that you saw?

A. No. I didn't want nothing to do with it.

Q. You're still in the cab at this point?

A. Yes.

Q. 4:15 you are on that 917 number again....
[T]hat's McFadden calling you back, correct?

A. Yes, I believe so.

Q. Again you didn't tell him anything about
the shooting at that point, right?

A. I didn't talk to him again after that.

Q. Did you answer the phone if you recall?

A. It probably went into my voice mail. I
don't know.

State v. Bueno, No. A-1394-04, 2006 WL 1492496, at *1-4
(N.J.Super.Ct.App.Div. June 1, 2006.)

## B. Procedural History

Following a jury trial, Petitioner was convicted of murder, in
violation of N.J.S.A. 2C:11-3(a)(1)(2); second-degree possession of
a handgun for an unlawful purpose, in violation of N.J.S.A.
2C:39-4(a); and fourth-degree resisting arrest, in violation of
N.J.S.A. 2C:29-2(a)(2). On September 17, 2004, after Petitioner's
conviction for possession of a handgun for an unlawful purpose was
merged into his murder conviction, he was sentenced to fifty-five
years in state prison, subject to an eighty-five percent parole
ineligibility term under the No Early Release Act, N.J.S.A.
2C:43-7.2. The court also imposed a consecutive one-year term for
resisting arrest. (Id. at *1.)

On November 10, 2004, Petitioner filed his notice of appeal.
(Resp't's Ex. Ra 4, Pet'r's Notice of Appeal, Docket Entry No. 8-

7

3.)   In his supporting brief, Petitioner raised the following arguments:

> POINT I: THE PROSECUTOR'S CROSS-EXAMINATION OF ELIGIO BUENO, WHICH FOCUSED ON BUENO'S FAILURE TO TELL THE POLICE THAT HE HAD WITNESSED THE SHOOTING OR PROVIDE THE POLICE WITH A DESCRIPTION OF THE SHOOTER, VIOLATED BUENO'S RIGHT TO REMAIN SILENT AND DEPRIVED HIM OF HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW AND A FAIR TRIAL. U.S. CONST. AMENDS. V, VI, XIV; N.J. CONST. (1947) ART. I, PARS. 1, 9, 10. (Not Raised Below.)

> POINT II: THE PROSECUTOR ENGAGED IN MISCONDUCT BY REPEATEDLY CASTIGATING BUENO FOR HIS PURPORTED COWARDICE, THEREBY DEPRIVING BUENO OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL. (Not Raised Below.)

> POINT III: IN ACCORDANCE WITH BLAKELY V. WASHINGTON, IMPOSITION OF A 55-YEAR TERM ON THE MURDER CONVICTION VIOLATES DEFENDANT'S CONSTITUTIONAL RIGHTS TO TRIAL BY JURY, PROOF BEYOND A REASONABLE DOUBT, DUE PROCESS OF LAW, AND RIGHT TO INDICTMENT AND MUST BE VACATED.
> POINT IV: THE SENTENCE OF 55 YEARS IS GROSSLY EXCESSIVE.

(Resp't's Ex. Ra 20, Pet'r's Br. Supp. Appeal 2, Docket Entry No. 12-2.) The New Jersey Superior Court, Appellate Division affirmed his judgment of conviction and sentence in an unreported opinion. Bueno, 2006 WL 1492496.

The New Jersey Supreme Court denied his petition for certification. State v. Bueno, 188 N.J. 356 (2006). Petitioner filed his first post-conviction relief ("PCR") application on December 12, 2006. (Resp't's Ex. Ra 26, Pet'r's PCR Pet., Docket Entry No. 13-4.) Following oral argument on October 19, 2007, Judge Mulvihill, who also presided over Petitioner's jury trial, stated his reasons for denying the petition in an oral decision.

8

(Resp't's Ex. Ra 30, PCR Hr'g Tr., Docket Entry No. 14-3.) Petitioner appealed, arguing that "the Court committed error by denying the Appellant's motion for post-conviction relief by finding that his allegation that his trial counsel was ineffective for not objecting to the Prosecutor's cross-examination on the Appellant's pre-arrest silence was barred as having been addressed on direct appeal." (Resp't's Ex. Ra 33, Pet'r's Br. Supp. Appeal 10, Docket Entry No. 27-1.)

The Appellate Division denied his appeal. State v. Bueno, No. A-4372-07, 2009 WL 3762907, at *2 (N.J.Super.Ct.App.Div. November 6, 2009.) Thereafter, the New Jersey Supreme Court denied certification. (Resp't's Ex. Ra 40, Cert. Denial Order, Docket Entry No. 17-3.) On October 28, 2010, Petitioner filed a second petition for post conviction relief pro se. (Resp't's Ex. Ra 41, Pet'r's 2nd PCR Pet., Docket Entry No. 18-1.) Petitioner alleged ineffective assistance of counsel for "failure to investigate witnesses." (Id.) Oral argument was conducted in state court on February 10, 2011, and on that same day, the state court filed an order which denied Petitioner's second post-conviction application without an evidentiary hearing. (Resp't's Ex. Ra 42, 2nd PCR Order, Docket Entry No. 18-2.)

Plaintiff filed his original petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on December 15, 2010. (Bueno v. State of New Jersey, 10-6552 (FLW).) This Court entered three

orders: (1) advising Petitioner of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000); (2) requiring the filing fee or complete in forma pauperis application; and (3) requiring an amended petition naming the warden as a respondent. (Id. at Docket Entry Nos. 2-4.)   Subsequently, Petitioner filed an amended petition, which was docketed as a new case, Bueno v. Bartkowski, 11-1631 (FLW).   Petitioner filed a letter with his amended petition, stating that he wished to withdraw his previous petition and proceed with the amended petition.   The Court entered an order closing the original case, 10-6552 (FLW), and ordering Respondents to file an answer to the amended petition filed in the instant case.   (Docket Entry No. 2.)   Respondents filed their answer on June 20, 2011.   (Docket Entry No. 8.)   Petitioner did not file a reply.

Petitioner raises five grounds in his petition:

1. The prosecutor's cross-examination of Eligio Bueno, which focused on Bueno's failure to tell the police that he had witnessed the shooting, or provide the police with a description of the shooter, violated Bueno's right to remain silent and deprived him of his constitutional rights to due process of law and a fair trial.

2. The prosecutor engaged in misconduct by repeatedly castigating Bueno for his reported cowardice, thereby depriving Bueno of his constitutional right to a fair trial.

3. An imposition of a 55 year term on the murder conviction violates defendant's constitutional rights to trial by jury, proof beyond a reasonable doubt, due process of law, and right to indictment and must be vacated.

4. Petitioner's trial attorney rendered ineffective assistance of counsel by failing to object to the prosecution's cross-examining petitioner regarding his right to remain silent.

5. Petitioner's trial attorney rendered ineffective assistance of counsel by failing to object to the prosecution engaging in misconduct by repeatedly castigating petitioner for his purported cowardice, thereby depriving petitioner of a fair trial.

(Docket Entry No. 1.)

## II. DISCUSSION

### A. Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 provides, in pertinent part:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State...

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result." Brown v. Payton, 544 U.S. 133, 141, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). The "unreasonable application" prong of AEDPA applies when a "state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts." Adamson v. Cathel, 633 F.3d 248, 255-56 (3d Cir. 2011)(quoting Wiggins v. Smith, 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). The test is "an objective one and does not permit a court to grant relief simply because the state court might have incorrectly applied federal law to the facts of a certain case." Id. (citing at Wiggins, 539 U.S. at 520-21).

A state court may render an adjudication on the merits of a

federal claim by rejecting the claim in an order unaccompanied by an opinion explaining the reasons relief has been denied.  See Harrington v. Richter, ---U.S. ----, ----, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011) ("a state court need not cite or even be aware of [Supreme Court] cases.... Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.")

With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, at *6 n.4 (D.N.J. October 16, 2000). In such instances, "the federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of AEDPA." Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001) (citing McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999)). "However, § 2254(e)(1) still mandates that the state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence." Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009)(citing Appel, 250 F.3d at 210.)  The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning

of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)(citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**B. Analysis**

**1. Pre-Arrest Silence**

In Ground One, Petitioner argues that the prosecutor's questions regarding his failure to tell Detective McFadden about the shooting during either of the two phone conversations they had prior to his arrest "suggested that [Petitioner's] version should not be believed because he failed to come forward and tell the police what he saw [which] violated [his] right to remain silent and deprived him of his constitutional rights to due process of law and a fair trial." (Pet. 19, Docket Entry No. 1.)

14

The Appellate Division stated the following in denying this claim on direct appeal:

> "A suspect has a right to remain silent while in police custody or under official interrogation, in accordance with his state law privilege against self-incrimination." State v. Muhammad, 182 N.J. 551, 558 (2005). Moreover, this silence "cannot be used against him in a criminal trial." Ibid.; see also State v. Deatore, 70 N.J. 100, 115 (1976). In this case, we are not persuaded that the questions that were asked of defendant violated his right to remain silent. When the telephone conversation took place, defendant was not in custody, and the conversation did not take place "at or near" the time of defendant's arrest. State v. Muhammad, supra, 182 N.J. at 569. Moreover, the testimony elicited from defendant during cross-examination was properly admitted to call into question defendant's inconsistent statements-including his promise to meet with the police and his subsequent failure to do so. We are satisfied that defendant's statements to McFadden during a telephone conversation, which occurred almost two weeks before defendant's arrest when defendant was not in police custody, do not implicate defendant's right against self-incrimination. State v. Brown, 118 N.J. 595, 613 (1990). And defendant's failure to meet with McFadden after telling him that he would "be there" in about a half an hour had a direct bearing on defendant's credibility.

Bueno, 2006 WL 1492496, at *4.

The Court finds that the New Jersey courts' adjudication of this claim was not contrary to, or an unreasonable application of Supreme Court precedent.  Specifically, the Supreme Court in Jenkins v. Anderson, 447 U.S. 231 (1980) stated that:

> Thus, impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial. We conclude that the Fifth Amendment is not violated by the use of prearrest silence to impeach a criminal defendant's credibility....In this case, no governmental action induced petitioner to remain silent before arrest. The failure to speak occurred before the petitioner was taken

into custody and given Miranda warnings. Consequently, the fundamental unfairness present in <u>Doyle</u> is not present in this case. We hold that impeachment by use of prearrest silence does not violate the Fourteenth Amendment.

Therefore, the Appellate Division's finding that the telephone conversations did not take place at or near the time of Petitioner's arrest and that the testimony elicited from Petitioner during cross-examination was properly admitted to call into question Petitioner's inconsistent statements, including his failure to meet with the police as promised, was not contrary to and did not involve an unreasonable application of clearly established federal law. Nor was the decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Petitioner has failed to meet his burden and this claim will be denied.

## 2. Prosecutorial Misconduct

In Ground Two, Petitioner argues that "during his cross-examination of the defendant the prosecutor embarked on a line of questioning castigating Bueno for his purported cowardice depriving the defendant of his right to a fair trial." (Pet. 19, Docket Entry No. 1.)

On direct appeal, the Appellate Division rejected Petitioner's claims of prosecutorial misconduct.

Defendant also claims for the first time that questions asked of defendant during cross-examination "were designed to portray Bueno as a coward," and the assistant prosecutor improperly "sought to inflame the jurors and

16

distract them from their task of evaluating the evidence and reaching a fair verdict." We do not agree. An appellate court reviewing an allegation of prosecutorial misconduct must determine whether the conduct "was so egregious that it deprived the defendant of a fair trial." State v. Frost, 158 N.J. 76, 83 (1999). We must consider a variety of factors, including: (1) whether defense counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether the court ordered the remarks stricken from the record and instructed the jury to disregard them. Ibid.

Because defense counsel did not object at trial, we infer that the defense did not believe that the questions asked of defendant were improper or unduly prejudicial. Id. at 83-84; see State v. Darrian, 255 N.J.Super. 435, 457-58 (App.Div.) certif. denied, 130 N.J. 13 (1992) (noting that defense counsel's failure to object at time of trial indicates that in the atmosphere of the trial the defense did not believe that the prosecutor's comments were prejudicial).

In this case, defendant was asked about his actions on the night of the murder and on the day of his capture. The questions were meant to highlight the disparity between defendant's testimony and the testimony of the State's witnesses. Based on our review of the record, we conclude that defendant's claim of prosecutorial misconduct has no merit. Moreover, we are satisfied that any possible error was harmless beyond a reasonable doubt. State v. Macon, 57 N.J. 325, 340-41 (1971); R. 2:10-2.

Bueno, 2006 WL 1492496, at *4-5.

Habeas review of a claim based on prosecutorial misconduct is limited to determining whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). "The touchstone of due process analysis in cases of

alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). "A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments [or conduct] standing alone, for the statements or conduct must be viewed in context." United States v. Young, 470 U.S. 1, 11, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

This Court finds that the prosecutor's comments during cross-examination did not have the capacity on their own to so infect the trial with unfairness as to make the resulting conviction a denial of due process. Moreover, as set forth above, the state court found there was more than sufficient evidence at trial to support the convictions now challenged by Petitioner.

Therefore, the Court finds no error of constitutional dimension with respect to Petitioner's claim of prosecutorial misconduct during cross-examination. The remarks by the prosecutor did not serve to infect the trial with unfairness, thus depriving petitioner of due process. The state court's ruling was not

contrary to, and did not involve an unreasonable application of, clearly established federal law; nor was it based on an unreasonable determination of the facts presented in the state court proceedings.  Accordingly, this claim will be denied.

**3. Sentence Term**

Petitioner was sentenced to a term of 55 years, 85% to be served without parole pursuant to the No Early Release Act.  The trial court found factors (3), (6) and (9) in aggravation of his conviction.  These factors read as follows: "(3) the risk that the defendant will commit another offense;...(6) the extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted;...(9) the need for deterring the defendant and others from violating the law." N.J.S.A. 2C:44-1(a).  In Ground Three, Petitioner argues that "all of those factors require factual determinations that are qualitatively different from the bare finding that Petitioner has incurred a prior conviction, yet none of the aggravating facts was presented [sic] to the grand jury or alleged in the indictment, imposition of the 55 year term violated Bueno's state constitutional right to indictment and because none of the aggravating factors the court relied on to impoose [sic] the sentence in excess of the presumptive term was found by the jury beyond a reasonable doubt or admitted by [Petitioner]." (Pet. 19-20, Docket Entry No. 1.)

A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." See Grecco v. O'Lone, 661 F.Supp. 408, 415 (D.N.J. 1987) (citation omitted). Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation. See Pringle v. Court of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984); see also 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). Petitioner's claim is based upon the Sixth Amendment right to trial by jury.

In Apprendi v. New Jersey, 530 U.S. 466, 471, 490 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In Blakely v. Washington, 542 U.S. 296, 303 (2004), the Supreme Court overturned a sentence imposed under Washington state's sentencing system, explaining that "the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may

impose without any additional findings."[2]

After review of the relevant record, it clear that the trial court did not violate the rule of Apprendi/Blakely or Petitioner's Sixth Amendment rights.  The New Jersey Supreme Court has held that there is no presumptive term for murder, but that "the standard range for murder is a sentence between thirty years and life imprisonment."  State v. Abdullah, 184 N.J. 497, 507 (2005).  In addition, under state law, "there is no presumption in favor of concurrent sentences and therefore the maximum potential sentence authorized by the jury verdict is the aggregate of sentences for multiple convictions."  Abdullah, 184 N.J. at 513-14 (citation omitted).  The Supreme Court has held that judicial factfinding in support of a sentencing judge's discretion to sentence within a statutory range does not violate the constitution.  See Booker, 543 U.S. at 233; Blakely, 542 U.S. at 308-09.

In this case, the trial court did not sentence Petitioner beyond the statutory range in violation of Apprendi and Blakely. The statutory range for murder in New Jersey is 30 years to life and Petitioner received 55 years, well within the range.  The aggravating factors found by the trial judge were not used to

---

[2] Most recently, in United States v. Booker, 543 U.S. 220 (2005), the Supreme Court applied the rule of Appendi to the U.S. Sentencing Guidelines, holding that the Guidelines are not mandatory, but are merely advisory.

21

sentence Petitioner above the relevant range,[3] and as such, are permissible under our Supreme Court precedent.

Therefore, the Appellate Court's finding that "the imposition of a fifty-five-year prison term on the murder conviction did not violate his constitutional right to trial by jury" was not contrary to, and did not involve an unreasonable application of, clearly established federal law; nor was it based on an unreasonable determination of the facts presented in the state court proceedings. Therefore, Petitioner is not entitled to relief on this claim.

### 4. Ineffective Assistance of Counsel

In Grounds Four and Five, Petitioner argues that trial counsel rendered ineffective assistance when he failed to object to the prosecutor's cross-examination of Petitioner regarding his right to remain silent and failed to object to the prosecutor's castigating of Petitioner for his purported cowardice.

In his PCR petition, Petitioner argued that his trial counsel had rendered ineffective assistance of counsel by failing to object to the prosecutor's cross-examination of Petitioner regarding his right to remain silent.  (Resp't's Ex. Ra 28, Pet'r's Br. Supp. Mot. PCR 12, Docket Entry No. 14-1.)  Petitioner also argued that

---

[3]To the extent Petitioner argues that the trial judge did not make the requisite factual findings necessary to sentence Petitioner to 55 years, this argument fails as it is clear from the record that the judge considered other aggravating factors beyond Petitioner's prior convictions. (Resp't's Ex. Ra 19, Sentencing Tr. 33:23-37:19, September 17, 2004, Docket Entry No. 12-1.)

his trial attorney rendered ineffective assistance of counsel by failing to object to the prosecutor engaging in misconduct by repeatedly castigating Petitioner for his purported cowardice. (Id. at 16.)

> In denying the petition, the trial court stated the following:
>
> The first two arguments, ineffective assistance of counsel, were decided by the Appellate Division. That's a higher court than this court, and the two excerpts from the Appellate Division decision addressed defendant's argument regarding the Fifth Amendment right to remain silent; second, depriving defendant of a fair trial because of alleged cowardice.
>
> So we have Appellate Division devoting a lot of time to this. They were not persuaded that the questions asked of defendant violated his right to remain silent. So they covered this in great detail. They do not agree that the questions were designed to portray Mr. Bueno as a coward. And they say in this case defendant was asked about his actions on the night of the murder and on the day of the capture, and they were to meant to highlight the disparity between the defendant's testimony and the testimony of the state's witnesses.
>
> I mean the, the evidence against Mr. Bueno was overwhelming. I mean there were eyewitnesses to his actions. It indicated flight, consciousness of guilt. He admitted his guilt to other witnesses, and there was physical evidence. I mean, there were all sorts of - there was a ton of evidence.
>
> And the Appellate Division concluded that the defendant's claim of prosecutorial misconduct had no merit, and if there was any possible error, it was harmless beyond a reasonable doubt.

(Resp't's Ex. Ra 30, PCR Hr'g. Tr. 24:13-25:15, October 19, 2007, Docket Entry No. 14-1.) Petitioner appealed the denial of his PCR petition, arguing that the trial court was incorrect in

23

procedurally barring his ineffective assistance of counsel argument because it was addressed on direct appeal. In its opinion, the Appellate Division stated the following:

> We reject this argument and affirm the denial of defendant's petition substantially for the reasons stated by Judge Mulvihill on October 19, 2007. As Judge Mulvihill indicated, this court previously rejected defendant's claim that "the questions asked of [him] violated his right to remain silent." Thus, that issue was procedurally barred by Rule 3:22-5. See State v. Precioce, 129 N.J. 451, 476, 609 A.2d 1280 (1992) ("[A] prior adjudication on the merits ordinarily constitutes a procedural bar to the reassertion of the same ground as a basis for post-conviction review."). Moreover, based upon this court's rejection of defendant's pre-arrest silence claim, it is clear that defendant's trial attorney was not ineffective for failing to present evidentiary arguments that would not have been successful.

Bueno, 2009 WL 3762907, at *2.

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. See Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. See Strickland, 466 U.S. at 687. First, the

defendant must "show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1403 (2011)(citing Strickland, 466 U.S. at 690, 104 S.Ct. 2052). "To overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances.'" Id. (citing Strickland, 466 U.S. at 688, 104 S.Ct. 2052).

Further, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. Id.

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding'...Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington v. Richter, 131 S.Ct. 770, 788 (2011)(citing Strickland, 466 U.S. at 687, 104

S.Ct. 2052).  As the Supreme Court explained,

> In making this determination, a court hearing an
> ineffectiveness claim must consider the totality of the
> evidence before the judge or jury. Some of the factual
> findings will have been unaffected by the errors, and
> factual findings that were affected will have been
> affected in different ways. Some errors will have had a
> pervasive effect on the inferences to be drawn from the
> evidence, altering the entire evidentiary picture, and
> some will have had an isolated, trivial effect. Moreover,
> a verdict or conclusion only weakly supported by the
> record is more likely to have been affected by errors
> than one with overwhelming record support. Taking the
> unaffected findings as a given, and taking due account of
> the effect of the errors on the remaining findings, a
> court making the prejudice inquiry must ask if the
> defendant has met the burden of showing that the decision
> reached would reasonably likely have been different
> absent the errors.

Strickland, 466 U.S. at 695-96.

The Supreme Court instructs that a court need not address both
components of an ineffective assistance claim "if the defendant
makes an insufficient showing on one."  Strickland, 466 U.S. at
697.  "If it is easier to dispose of an ineffectiveness claim on
the ground of lack of sufficient prejudice, which we expect will
often be so, that course should be followed."  Id.

As stated above, Petitioner's arguments regarding his right to
remain silent and the prosecutor's alleged castigating of him
regarding his alleged cowardice are without merit.  Therefore, it
was not unreasonable for counsel not to have raised said arguments
before the state court.  Further, Petitioner has not shown any
prejudice that resulted from the alleged failures of trial counsel.

26

As the state courts repeatedly pointed out, there was ample evidence to support Petitioner's conviction.

Therefore, the state courts' decisions on the ineffective assistance of counsel issues were not contrary to, and did not involve an unreasonable application of, clearly established federal law; nor were they based on an unreasonable determination of the facts presented in the state court proceedings.   Therefore, Petitioner is not entitled to relief on these claims.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, jurists of reason would not disagree with this Court's finding that Petitioner has failed to make a substantial showing of the denial of a constitutional right.   No certificate of appealability shall issue.

27

**IV. CONCLUSION**

For the reasons set forth above, the Petition must be denied. An appropriate order follows.


Dated:    January 6, 2012

<div align="center" style="margin-left:40%">

/s/ Freda L. Wolfson
Freda L. Wolfson
United States District Judge

</div>